# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DAVID HALE,                              :

    Plaintiff,                     :

                        Case No. 3:13cv00182

vs.                                      :

                        District Judge Walter Herbert Rice

CAROLYN W. COLVIN,                       :       Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                 :

    Defendant.                     :

===

## REPORT AND RECOMMENDATIONS[1]

===

## I.    <u>Introduction</u>

Plaintiff David Hale has endured an inflammatory bowel disorder, Crohn's disease, for many years, and for many years he has suffered its fluctuating symptoms. In general, symptoms of Crohn's disease "range from mild to severe, and can come and go with flare-ups." http://www.nlm.nih.gov (search: Medline Plus database). During Hale's flare-ups, he experiences abdominal pain, severe diarrhea, fever, and fatigue. Despite his symptoms, Hale worked several types of jobs, mostly in a factory setting. He began working in his teenage years and continued to work until age 31. In September 2009, Hale stopped working because his symptoms from Crohn's disease had worsened, seeming to him "like a constant

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

flare-up...."  (Doc. #6, PageID at 107).

In late 2009, Hale applied for Disability Insurance Benefits and Supplemental Security Income, asserting that on September 9, 2009, and thereafter, Crohn's disease and his resulting symptoms precluded him from full-time work and constituted a benefits-qualifying disability.  The Social Security Administration disagreed and denied his applications based on the written decision of Administrative Law Judge (ALJ) Mary F. Withum.  ALJ Withum concluded that Hale was not eligible to receive Disability Insurance Benefits or Supplemental Security Income because he was not under a "disability" within the meaning of the Social Security Act. (Doc. #6, PageID at 70-81).

Hale brings the present case challenging ALJ Withum's decision.  He contends here, as he did during his administrative proceedings, that he "is disabled."  (Doc. #7, PageID at 566).  He therefore seeks a reversal of ALJ Withum's decision and a remand of this matter to the Social Security Administration for payment of benefits.  At a minimum he seeks a remand for further administrative proceedings. The Commissioner seeks an Order affirming the ALJ Withum's decision.

## II.  **"Disability" Defined**

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must (among other requirements) be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  "Disability" is defined essentially the same for both types of benefits.  *See Bowen v. City of New York*, 476 U.S.

2

467, 469-70 (1986).  A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.[2]  *See Bowen*, 476 U.S. at 469-70.

## III.    <u>Hale's Testimony</u>

During a hearing in November 2011 before ALJ Withum (who presided by video teleconference from Chicago), Hale testified that taking prescription medications – namely, Remicade or Humira – did not help control his Crohn's disease flare-ups.  He explained, "Over the last two years, I've gotten worse as far as like the accidents I'm having.  When I was having accidents, pooping on myself, the pain.  It's gotten worse.  It's ruined my life." (Doc. #6, PageID at 99).  He further explained:

> Throughout the night, I'm waking up all the time.  I don't get a good night's sleep first of all, due to having to wake up, the pain or having to use the restroom, diarrhea.  In the morning, once my daughter gets up, I'll give her something to eat, sit down watch Bubble Guppies, some cartoon. Go to the restroom a little more.  I stay home.  I don't leave the house if it's not, if I don't have to leave the house, I don't leave due to the fact of the Crohn's.

*Id*., PageID at 104.  His symptoms are worse after he eats.  He testified:

> When I eat ... it's a continuous flare-up.  I'm hurting all the time.  I'm having to go to the bathroom all the time even if I don't eat.  I still consume water.  It's pure water that comes out of me.  It's not solid stool.  It's diarrhea.

---

[2] The impairment must also be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423, 1382c(a)(3).

* * *

> I don't enjoy being in pain[.]  I don't enjoy spending my whole day on a toilet.  So I stay away from the foods I know that's going to make it worse.  A week ago, I had a tomato.  I thought I was going to die.  I know to stay away from it now.

(Doc. #6, PageID at 104-05).

When Hale was asked about the time he stopped working in 2009, he testified:

> As far as the time off work..., [m]y history is terrible due to the fact of the Crohn's.  It's just gotten worse.  Having accidents, pooping on myself, the pain.

> I'm unable to go to work if I wake up hurting real bad and I take my pain medicine, I'm not going to go to work.  I'm not going to drive my vehicle into work.  Obviously, if I'm hurting and having a bad day, I'm going to poop on myself....

*Id.*, PageID at 106.  He noted that the pain occurs in his right abdomen.  He described it as a "[s]tabbing, unbearable pain like someone is gutting me." *Id.*, PageID at 107.  He takes Percoset for pain.  When asked if Percoset helps, he answered, "It doesn't take it completely away, but anything is better than nothing." *Id.*, PageID at 106.

Hale has Crohn's-caused accidents at home at least two to three times a day when he does not make it to the bathroom from the couch.  *Id.*  His weight goes up and down between one to five pounds.  *Id.*, PageID at 104.

When Hale was employed in 2009, he had health-insurance coverage.  But by August 2010, at the latest, he was no longer covered by health insurance.  *Id.*, PageID at 100, 102-03.

4

Hale does not have hobbies, other than watching football.  He can no longer play sports.  He does not attend his step-children's school activities.

## IV.   **Administrative Review**

ALJ Withum considered the evidence and resolved Plaintiff's disability status under the governing five-Step sequential evaluation.  *See* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4);[3] *see also Wilson v. Comm'r of Social Sec*., 378 F.3d 541, 543 (6th Cir. 2004).

At step one of the sequential evaluation, the ALJ found, in part, that had Hale engaged in substantial gainful activity in the fourth quarter of 2009 working as a general operator in an exhaust plant.  (Doc. #6, PageID at 72).  The ALJ further found that Hale had not engaged in substantial gainful activity after the fourth quarter of 2009.  And the ALJ "provided a full analysis of the medical evidence, including the period that the claimant was working at the substantial gainful activity level."  *Id*.

The ALJ concluded the following at the remaining steps of her evaluation:

Step Two:     Hale has the severe impairment of Crohn's disease.

Step Three:   Hale does not have an impairment or combination of impairments that met or equaled one of the Commissioner's Listing of Impairments.

Step Four:    Hale has "the residual functional capacity to perform light work...,
              meaning the claimant is capable of lifting or carrying 20 pounds
              occasionally, lifting or carrying 10 pounds frequently, sitting for 6
              hours in an 8-hour workday, and standing or walking 6 hours in an 8-

---

[3] The remaining citations are to the Disability Insurance Benefits Regulations.  The citations incorporate the corresponding Supplemental Security Income Regulations without separately identifying them.

hour workday.  The claimant would require access to a bathroom three time a day at regular intervals during an 8-hour workday, with the opportunity to change protective undergarments."  Additionally, Hale was unable to perform any past relevant work.

Step Five:    Hale was capable of performing a restricted range of light jobs that are available in the national economy.

(Doc. #6, PageID at 73-80).  The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Hale was not under a disability and, therefore, was not eligible to receive Disability Insurance Benefits or Supplemental Security Income.

## V.     Judicial Review

The Social Security Administration determines whether a claimant is under a disability and eligible for benefits.  42 U.S.C. §§405(b)(1), (h).  Its administrative determination of disability – typically embodied in an ALJ's written decision – is subject to review in this Court along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains

evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r

of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at

241.

**VI.**   **Discussion**

Hale contends that the ALJ failed to provide good reasons for placing no weight on

the opinion of his treating specialist, Dr. Gaeke.  Hale also contends that the ALJ committed

reversible error by failing to appropriately evaluate Hale's credibility and pain complaints.

The Commissioner contends that substantial evidence supports the ALJ's evaluation

of the medical opinions and Hale's credibility.

**A.**   **Medical Source Opinions**

**1.**

Social security regulations recognize several different categories of medical sources:

treating physicians, nontreating yet examining physicians, and nontreating record-reviewing

physicians.  *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013).

As a general matter, an opinion from a medical source who has

examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (d) (eff. April 1, 2012)).

A treating source's opinion may be given controlling weight under the treating-physician rule only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d at 376; *see* 20 C.F.R. §404.1527(d)(2) (eff. April 1, 2011). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6) (eff. April 1, 2012)).

In October 2011, Dr. Gaeke completed an "Attending Physician Statement." (Doc. #6, PageID at 528). He noted that he initially treated Hale on August 3, 2004, and his most recent treatment date was August 2, 2011. *Id*. Dr. Gaeke identified Hale's diagnosis as Crohn's disease, referring to the objective findings in attached records. *Id*. He further noted

8

that Hale had undergone small bowel surgery in 2001.  And Dr. Gaeke opined that Hale was

unable to return to work "due to symptoms and medication."  *Id*., PageID at 529.

    ALJ Withum rejected Dr. Gaeke's disability opinion, explaining:

> The claimant has worked with his symptoms while on medication for
> his condition.  Further, Dr. Gaeke concluded that the claimant has no
> exertional limitations related to abdominal pain, fatigue and other
> symptomatology.  This is inconsistent with treatment notes and clinical
> findings.  (Exh. 15F; see Exh. 14F).  The undersigned gives no weight to Dr.
> Gaeke's opinion, as it is unsupported and inconsistent with the medical
> evidence of record.

(Doc. #6, PageID at 79).

## 2.

    The ALJ erred when rejecting Dr. Gaeke's opinion by failing to follow Social

Security Regulations, a pertinent Social Security Ruling, and cases decided by the Sixth

Circuit Court of Appeals.  The Regulations require ALJs to "always give good reasons ... for

the weight [they] give your [a claimant's] treating source's opinion." 20 C.F.R.

§404.1527(d)(2).  Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996) echoes this

mandate and further explains that an ALJ's decision "must contain specific reasons for the

weight given to the treating source's medical opinion, supported by the evidence in ths case

record, and must be sufficiently specific to make clear to any subsequent reviews the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that

weight."  *Id*., 1996 WL at *5.  The United States Court of Appeals for the Sixth Circuit

characterizes the "good reasons" requirement in §404.1527(d) as "a mandatory procedural

protection...," *Wilson*, 378 F.3d at 546, identifying its significance to both claimants and the courts:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Id*., 378 F.3d at 544 (quoting, in part, *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999) (other citation omitted). Over the span of nearly ten years, the Sixth Court has often repeated this practical refrain, continuing to draw upon both Regulation and Ruling. *E.g., Gentry v. Comm'r of Soc. Sec.*, __F.3d__, __, 2014 WL 398057 at *18 (6th Cir. Feb. 4, 2014); *Gayheart*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Johnson v. Comm'r of Social Sec*., 652 F.3d 646, 651-52 (6th Cir. 2011); *Rabbers*, 582 F.3d at 657; *Blakley*, 581 F.3d at 406-07; *Rogers*, 486 F.3d at 242-43; *Sharp v. Barnhart*, 152 Fed. App'x 503, 510 (6th Cir. 2005).

The ALJ's decision to place no weight on Dr. Gaeke's opinion is nearly bereft of explanation. What does appear is conclusory. The ALJ first wrote, "Dr. Gaeke concluded that the claimant is unable to work with his symptoms and medication. The claimant has worked with his symptoms while on medication for his condition...." (Doc. #6, PageID at 79). Without more explanation or reference to medical evidence of record, the occurrence of time when Hale could work while on medication exposes no weakness in Dr. Gaeke's

opinion. When considering Dr. Gaeke's opinion, *id*., the ALJ did not refer to evidence showing that Hale would experience, at times, adverse fluctuations in the severity of his symptoms, making unlikely he could not work while on those days, even though he was on medication. *See* Doc. 6, PageID at 347 (8/09: listing Humira and Hale's symptoms of fever, diarrhea, and abdominal pain); Page ID at 393 (6/09: "on Humira"; "diarrhea preventing work."); PageID at 395 (5/12/09: continuing on Humira but "missing work" with "chronic abd[ominal] pain [and] diarrhea."); *see also*, Doc. 6, PageID at 401. The evidence thus presents both scenarios: Sometimes Hale could work when taking medication; sometimes he could not. The ALJ's total rejection of Dr. Gaeke's opinion based only on the former scenario without further explanation or reference to medical evidence fails to provide good reasons for rejecting this long-term treating specialist's disability opinion. In addition, substantial evidence does not support the ALJ's sole reason for rejecting Dr. Gaeke's opinion in light of contrary evidence in the record. "[A] substantiality of evidence evaluation does not permit a selective reading of the record. 'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Social Sec.*, 531 Fed. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

Next, the ALJ overlooked that Hale's ability to work at times while medicated tends

to confirm the fluctuating severity of his symptoms. This is no surprise given the fact that those with Crohn's disease often suffer symptoms that fluctuate in severity. *See* http://www.nlm.nih.gov (search for Crohn's disease) ("Symptoms [of Crohn's disease] range from mild to severe, and can come and go with periods of flare-ups."); *see also* The Merck Manual at 305 (17th Ed. 1999) ("Although spontaneous remission or medical therapy may result in a prolonged asymptomatic interval, established Crohn's disease is rarely cured but instead is characterized by intermittent exacerbations."). Consequently, the occurrence of Hale's less symptomatic days when he could work says nothing negative about Dr. Gaeke's disability opinion, especially when Dr. Gaeke doubtlessly understood the fluctuating severity of Crohn's disease, in general, and Hale's symptoms, in particular. Dr. Gaeke's status as a specialist and his lengthy treatment of Hale's Crohn's disease creates the likelihood that he gained an evidence-based and thorough understanding of Hale's fluctuating symptoms and the negative impact those symptoms have had upon his work abilities. The Regulations speak to this aspect of treating medical sources opinions: "Generally, we give more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective findings alone ...." 20 C.F.R. §404.1527(d)(2); *see Johnson*, 652 F.3d at 651 (quoting §404.1527(d)(2)). Since this significant status is generally afforded long-term treating physicians like Dr. Gaeke, the ALJ needed to further

discuss the evidence and/or her reasons for rejecting Dr. Gaeke's opinion in order to satisfy the mandatory "good reasons" requirement.

The ALJ completed her consideration of Dr. Gaeke's opinion as follows:

> Further, Dr. Gaeke concluded that the claimant has no exertional limitations related to his abdominal pain, fatigue and other symptomatology. This is inconsistent with the treatment notes and clinical findings. (Ex. 15F; See Ex. 14F). The undersigned gives no weight to Dr. Gaeke's opinion, as it is unsupported and inconsistent with the medical evidence of record.

(Doc. #6, PageID at 79). Here are two regulatory factors, stated negatively, "unsupported" and "inconsistent." *See* 20 C.F.R. §404.1527(3)-(4). But to satisfy the good-reasons requirement, the ALJ needed to do more than refer generally to treatment notes and clinical findings because her conclusions beg the questions: What treatment notes? What clinical findings? Answers to such questions were necessary in Hale's case because there is no dispute over the fact that he has Crohn's disease with symptoms fluctuating in severity. These fluctuations, of course, mean that Hale's medical records contain information showing that his symptoms were sometimes severe and sometimes not. Consequently, the ALJ's use of "inconsistent" and "unsupported" as to Dr. Gaeke's opinion was based on an overly selective reading of the record. Again, "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks*, 531 Fed. App'x at 641 (quoting, in part, *Garner,* 745 F.2d at 388).

And, the ALJ's consideration of Dr. Gaeke's opinion is generic. Her reasons could apply to those within the group of long-term, treating physicians who offer a disability

13

opinion about a patient/claimant with Crohn's disease and fluctuating symptoms. In such cases, the medical records would contain inconsistent findings, showing times of asymptomatic remission as well times of "intermittent exacerbations." The Merck Manual at 305. To separate Dr. Gaeke and Hale from that group – and thus provide "good reasons" for rejecting Dr. Gaeke's opinions – the ALJ needed, for example, to identify the specific instances in Dr. Gaeke's records indicating that Hale experienced less-severe symptoms and discuss why those instances led her to reject Dr. Gaeke's opinion. Similarly, citation to specific medical findings in Dr. Gaeke's records may have likewise sufficed to satisfy the "good reasons" requirement. This is so because such information would have enhanced Hale's understanding – thus eliminating his bewilderment – of the ALJ's choice to reject the opinion of his long-term treating physician. *See Wilson*, 378 F.3d at 544. Such information would also make meaningful review possible by this Court and subsequent reviewers, thus satisfying the "good reasons" requirement. *Id*. Without some explanation along one or more of these lines, the ALJ's decision creates the undesirable effect noted by the Sixth Circuit: Hale is, no doubt (given his present challenges), "especially bewildered" to be told by the ALJ that he is not under a disability due to Crohn's disease and his resulting symptoms when his treating specialist believes otherwise. *See Wilson*, 378 F.3d at 544. And the ALJ's omission of "good reasons" for rejecting Dr. Gaeke's opinion, deprives this Court and subsequent reviewers of a meaningful opportunity to determine whether the ALJ applied the treating-physician rule or analyzed Dr. Gaeke's disability opinion under any of the

remaining regulatory factors.  *See Wilson*, 378 F.3d at 546.

      The Commissioner argues – citing Social Security Ruling 96-5P – "because Dr. Gaeke's opinion was conclusory, the ALJ was not required to evaluate this opinion in the same way as a typical treating physician's opinion."  (Doc. #10, PageID at 574-75).  A thorough reading and consideration of Social Security Ruling 96-5P, 1996 WL 374183, does not reveal support for the Commissioner's proposition.  Instead, this Ruling re-emphasizes, "in evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."  *Id*., 1996 WL 374183 at *3.  The ALJ in the present case did not provide a meaningful explanation of how she applied any applicable factor(s) to Dr. Gaeke's opinion.  *See* Doc. #6, PageID at 79.  In addition, Ruling 96-5P notes that although "[t]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight," 1996 WL 374183 at *6, this Ruling reminds ALJs that "the notice of determination or decision must explain the consideration given to the treating source's opinion(s)."  *Id*.  Ruling 96-5P does not cast doubt on the requirement that ALJs provide "good reasons" sufficient to satisfy §404.1527(d), Social Security Ruling 96-2P, and case law.

      A brief sidetrack is warranted here because the ALJ conducted Hale's hearing by videoconference from Chicago.  This means that the ALJ likely works on Social Security matters arising the geographic boundaries of the Seventh Circuit Court of Appeals.  Although not controlling on this Court, perhaps there is something in Seventh Circuit

caselaw that arguably allowed the ALJ to forego the "good reasons" requirement? There is

not. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ must offer 'good

reasons' for discounting a treating physician's opinion." (citations omitted)). Additionally,

the Seventh Circuit imposes a general yet demanding standard: "The ALJ is not required to

discuss every piece of evidence, but must build a logical bridge from evidence to conclusion.

If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded."

*Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing, in part, *Steele v. Barnhart,* 290

F.3d 936, 941 (7th Cir. 2002); *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)

(other citations omitted)). The ALJ's conclusory rejection of Dr. Gaeke's opinion would not

satisfy this demanding standard; her decision did not build a logical bridge from the evidence

to the conclusion that Dr. Gaeke's opinion was due no weight. Regardless, for the reasons

explained above, the ALJ's rejection of Dr. Gaeke's opinion is contrary to controlling

Regulations, Ruling 96-2P, and Sixth Circuit case law.

The ALJ placed great weight on the opinions provided by Dr. Das, who examined the

record in March 2010 for the Ohio Bureau of Disability Determinations. Dr. Das opined that

Hale could perform the requirements of medium work.[4] The record Dr. Das reviewed did

not contain a treating physician opinion. (Doc. #6, PageID at 431).

The ALJ considered Dr. Das's opinions as follows:

The undersigned affords great weight to the State agency medical

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

16

> consultant's assessment, as it is supported by specific clinical references. The undersigned, however, finds that the evidence supports a reduction to the light exertional level due to the claimant's consistent complaint of abdominal pain.

(Doc. #6, PageID at 79). The problem with this review is that it focuses on Hale's exertional limitations. In the present case, Hale does not argue that he cannot perform some light work on the occasions when his symptoms are dormant. He maintains, "The issues are not whether [he] can sit, stand, walk, lift. Instead, the issues are whether or not [his] Crohn's disease ... would prevent him from being able to be a reliable employee who could stay focused on a job and stay at a job site enough to provide the kind of work necessary to sustain gainful employment." (Doc. #7, PageID at 553).

Hale is correct that Dr. Das did not provide an opinion about Hale's need for potentially frequent restroom breaks or his potentially frequent work absences caused by his Crohn's disease and symptoms. *See id*., PageID at 425-32. The closest Dr. Das came was addressing Hale's credibility:

> Claimant's symptoms are partially credible. He alleges not being able to control his bowels, pain and cramping. He does have chronic diarrhea with chronic inflamation but his anastamosis is intact. He has some non compliance issues noted in his records.

*Id*., PageID at 430. Rather than supporting the ALJ's finding that Hale required only three restroom breaks at regular intervals during a workday, Dr. Das accepted that Hale has chronic diarrhea with chronic inflation. Beyond this, Dr. Das's report provides no insight into the frequency or number of restroom breaks Hale's Crohn's disease and symptoms dictate. As a result, Dr. Das's report does not constitute substantial evidence in support of

17

the ALJ's conclusion that Hale needed only three restroom breaks at regular intervals during an eight-hour workday.

Accordingly, for all the above reasons, Hale's challenges to the ALJ's review of the opinions provided by Drs. Gaeke and Das are well taken.

### B.     Credibility

Hale argues that the ALJ erred by failing to appropriately evaluate his credibility and reports of pain.  The Commissioner contends that substantial evidence supports the ALJ's credibility determinations.

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'  However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citation omitted).

Hale is correct to argue that his own testimony constitutes evidence to support the conclusion that three unscheduled breaks with the ability to change protective undergarments is insufficient.  His testimony is evidence, of course.  "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Cruse*, 502 F.3d at 542 (quoting *Jones v. Comm'r of Social Sec.,* 336 F.3d 469, 475 (6th Cir. 2003)).

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r*

18

*of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Crohn's disease is the type of underlying

medical condition that can produce disabling symptom such as the symptoms Hale described

– abdominal pain, fever, fatigue, and severe diarrhea that causes Crohn's-caused "accidents"

involving repeated episodes of daily incontinence.

> Where the symptoms and not the underlying condition form the basis of
> the disability claim, a two-part analysis is used in evaluating complaints of
> disabling pain. First, the ALJ will ask whether the there is an underlying
> medically determinable physical impairment that could reasonably be expected
> to produce the claimant's symptoms. Second, if the ALJ finds that such an
> impairment exists, then he must evaluate the intensity, persistence, and limiting
> effects of the symptoms on the individual's ability to do basic work activities.

*Rogers*, 486 F.3d at 247 (internal citations omitted). The ALJ answered the first question

affirmatively by finding that "the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms[.]" (Doc. #6, PageID at 77). The

ALJ answered the second question negatively, finding, "the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible

to the extent they are inconsistent with the above residual functional capacity assessment."

*Id*. When evaluating the "intensity, persistence and limiting effects of" a claimant's

symptoms, ALJs consider various factors.

> Relevant factors for the ALJ to consider in his evaluation of symptoms
> include the claimant's daily activities; the location, duration, frequency, and
> intensity of symptoms; factors that precipitate and aggravate symptoms; the
> type, dosage, effectiveness, and side effects of any medication taken to
> alleviate the symptoms; other treatment undertaken to relieve symptoms; other
> measures taken to relieve symptoms, such as lying on one's back; and any
> other factors bearing on the limitations of the claimant to perform basic
> functions.

*Rogers*, 486 F.3d at 247 (citations omitted).

When rejecting Hale's testimony, the ALJ relied on his daily activities based on a function report Hale completed in January 2010.  The ALJ pointed out, "In the function report..., the claimant reported that he leaves the house 4-5 times a day, shops in stores for food, clothes and hygiene necessities twice a week, and drives a vehicle to complete errands.  He also reported that he does the laundry, cleans the house, mows the lawn, vacuums, takes care of the dogs and takes the trash out.  He sometimes spends as long as two hours doing the laundry and caring for the lawn."  (Doc. #6, PageID at 77).  Yet the ALJ overlooked or ignored that Hale further reported that his wife assists in "the daily feedings, cooking, house chores and any necessary errands."  *Id*., PageID at 271.  Although Hale spends two hours doing laundry and mowing the grass, it takes him only five minutes to take out the trash, which is hardly enough of an activity to conflict with his testimony.  He also noted in two separate places in the function report, "All activity is usually interrupted by bowel movements and abdominal pain."  *Id*., PageID at 274.  The ALJ also ignored may of Hale's statements in the function report that were consistent with his testimony during the administrative hearing.  For example, in the function report, he stated:

> Due to Chrohn[']s disease I need to be in very near proximity to a restroom in case my symptoms are agitated in any manner.  This has caused limitations where and how long I can work on any job and has affected my normal daily living.  I am constantly fatigued due to the lack of sleep caused by having to wake up every couple of hours throughout the night to have a bowel movement....
>
> The abdominal pain feels as though someone is stabbing a sharp object into my

20

abdomen.  My intestines feel as though they are going to explode. Then I have constant rectum discomfort from having so many bowel movements throughout the day.

The fatigue is just being constantly tired because of the lack of sleep.  I can not [sic] get several hours of sleep in a row because of having unexpected bowel movements in the middle of the night.  There is no such thing as restful sleep in my life....

Abdominal pains can just flare up with no real explanation why it has.  There has been no set reasoning for the onset of abdominal pain.

(Doc. #6, PageID at 284).  He also noted that he has "to deal constantly with the pain and frustration of unexpected bowel movements, abdominal pain and chronic fatigue.  Sometimes not making it to the restrooms and having a bowel movement in my clothing...." *Id*.  Because these explanations were consistent with Hale's testimony during the administrative hearing, the ALJ erred by not recognizing the consistencies enhanced Hale's credibility.  The Commissioner explains through a Ruling, "One strong indication of credibility of an individual's statements is there consistency, both internally and with other information in the case record.  The adjudicator must consider such factors as: ... The consistency of the individual's own statements....  The adjudicator must also look at statements the individual made to SSA at each prior step of the administrative review process and in connection with any current claim ...."  Social Sec. Ruling 96-7P, 1996 WL 374186 at *5 (July 2, 1996). Rather than either crediting the many consistencies or explaining why any inconsistencies overwhelmed the consistencies in the information Hale provided to the Social Security Administration, the ALJ pointed to details that had little, if anything, to do with his

credibility. The ALJ, for instance, noted that Hale "sat throughout the over 60-minute long hearing without any need to use the restroom." (Doc. #6, PageID at 77). Hale, however, did not testify that he could not sit for one hour without using the restroom. He instead testified that his bowel movements were sudden, unexpected, and sometimes accidental, without specifically stating that he could not go one hour without a bowel movement. Although the ALJ recognized that Hale "reported that he is in the restroom ... 8-30 times a day," *id*., the numbers at the lower end of this estimated range of daily bowel movements would leave hour-long periods of time when Hale did not have a bowel movement, consistent with his experience during the ALJ's hour-long hearing.

The ALJ rejected Hale's testimony about his severe diarrhea and that he has nearly no warning and has severe accidents, even while at home. The ALJ explained, "This is contradictory to his report that he runs errands and does the grocery shopping twice a week." (Doc. #6, PageID at 77). But the ALJ ignored or overlooked that Hale also reported that his wife assists him with "any necessary errands," *id*, PageID at 271, and that all his activities are usually interrupted by bowel movements and abdominal pain, *id*., PageID at 277.

For all these reasons, the ALJ erred by gleaning evidence from the function report that favored her credibility conclusion while ignoring contrary evidence in the same report. In addition to the many consistencies in the function report, it was particularly necessary for the ALJ to consider all of Hale's statements in the function report due to the reasonable likelihood that Crohn's disease could cause the exact symptoms Hale described.

22

"Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Sec.*, 531 Fed. App'x. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984)).

The Commissioner contends that the ALJ's credibility analysis was supported, in part, by "the lack of changes in Plaintiff's medication regimen."  (Doc. #10, PageID at 577).  Without more information about why his medication regimen remained the same, the lack of medication changes says little about the severity or quiescence of Hale's symptoms.  Rather than an assuming it was an efficacious treatment that controlled Hale's symptoms, it is equally and reasonably likely that Hale's physicians had no better treatment option than maintaining his medication regime even though his symptoms remained severe.  Indeed, the latter seems more likely than the former given that Hale has already undergone multiple surgeries, colonoscopies, treatment modalities, and medications, including Humira, Remicade, Entcort, Bentyl, Xanax, and a Medrol dosepak.

Accordingly, Hale's challenges to the ALJ's credibility determination are well taken.[5]

## VII.  **Remand is Warranted**

If the ALJ failed to apply the correct legal standards or her factual conclusions are not

_____

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Hale's remaining challenge to the ALJ's decision is unwarranted.

23

supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Hale, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) evaluate all the medical source opinions of record and Hale's credibility under the legal criteria applicable under the Commissioner's Regulations and Rulings and as mandated by case law; and (2) review Hale's disability claim under the required five-step sequential analysis to determine anew whether Hale was under a disability and thus eligible for DIB and/or SSI.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff David Hale was under a "disability"
        within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge
        under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent
        with this Report; and

4.      The case be terminated on the docket of this Court.


March 5, 2014

                                        _____s/Sharon L. Ovington_____
                                            Sharon L. Ovington
                                        Chief United States Magistrate Judge


25

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).